Bergan, J.
On August 2, 1933, while claimant Victor L. Lombardo was employed by the Endicott Johnson Corporation in a shoe manufacturing plant at Johnson City, he sustained an injury to his back in the course of employment. Almost eleven years later, on June 24, 1944, for the first time he filed a claim for workmen’s compensation.
The Workmen’s Compensation Board has decided that the employer, by furnishing medical treatment within three years before the claim was filed, has made a “ payment of compensation ” within the scope of section 25-a of the Workmen’s Compensation Law, thus reviving responsibility for an award in compensation. The board treated the claim as an application to reopen, since it is conceded that the employer had furnished medical treatment for the injury immediately after the accident. A compensation award was made against the employer, and the Special Fund for Reopened Cases established by section 25-a was discharged from responsibility.
The Endicott Johnson Corporation follows a general policy of furnishing free medical and hospital services to its 17,000 employees and their dependents, without reference to the origin or nature of disability. The service costs about $1,000,000 a year. The corporation maintains four medical clinics, two at *20 Endicott and two at Johnson City, one devoted to general free medical care and one to compensation cases in each city.
The clinical records indicate that the claimant was treated at the general medical facility at Endicott before and after the accident a substantial number of times for conditions wholly unrelated to the accident. On August 9, 1933, a week after the accident, the record shows he was at the general clinic for an “ injury to his back ”, and was referred to the compensation clinic. The physician who examined him found tenderness and contusion of the lumbar area, regarded his disability as slight, felt he could return to work five days later, and discharged him as of August 14, 1933.
Following this the claimant was at the general clinic in 1934 and early 1935, for other illnesses and later in 1935, again complaining of his back, he was referred to the compensation clinic, where an X-ray examination was made which showed a “ Non-fusion transverse process of 1st lumbar right ”, which in the opinion of the physician was congenital and not related to any accident.
The following year,' May 6, 1936, he complained of his back in the general clinic and was again referred to the physician who had treated him at the compensation clinic. The physician at the compensation clinic has no record of treatment after this until he examined him after the claim was filed. Claimant himself does not clearly place the treatment by this physician later than 1937. He retained a personal physician in 1938, in reference to his back. From 1935 to 1942, he was at the general clinic a number of times for diverse causes.
Within the three-year period before the filing of the claim on June 24, 1944, claimant was treated at the general clinic on July 5, 1941, for “ myositis ”, which is an inflamation of muscle tissue, but without reference to the situs of the condition. On July 30th he was again at the clinic for “ myositis — sacroiliac strain ”, and physiotherapy was prescribed which was continued on August 14, 1941, and further examinations in reference to this condition were made August 21st and 29th.
There is no suggestion in the record that the physician who examined and prescribed for the claimant in the summer of 1941, was of opinion that the condition of myositis and sacroiliac strain observed on July 30th, was related to the accident of 1933. There is no hypothetical or other medical opinion relating these specific observations at the clinic to the accident and there is nothing in claimant’s or any other witness’ testimony to indicate that claimant suggested to the physician at the *21 general clinic that the condition from which he was suffering was to he associated with the accident eight years earlier.
The physician at the clinic had, or had available, the medical entry of August 9, 1933, showing “ injury to back ” and the X ray of 1935, of the lumbar spine showing nonfusion, but the record also showed other attacks of myositis, as on January 31, 1934, related to the “ right calf ”, and on September 15, 1939, myositis not related to any specified region. There were altogether in the medical records some thirty-one entries previous to July 5, 1941, for claimant, which referred to a number of different kinds of ailments.
The statute itself in 1941 did not expressly treat the furnishing of medical services as a “ payment of compensation ” (§ 25-a), but the meaning had been imported to the language by judicial construction in a series of adjudications, notably in Matter of Cook v. New York Central R. R. Co. (296 N. Y. 576), decided in 1946.
The Legislature rather promptly asserted its own interpretation of its intent by the enactment within the year of chapter 185 of the Laws of 1947, which amended subdivision (a) of section 13 of the Workmen’s Compensation Law to state in plain language that providing of medical treatment or care “ shall not constitute the payment of compensation ” under section 25-a. This amendment was effective March 17,1947.
The decision of the Workmen’s Compensation Board upon its evaluation of the furnishing of medical services as payment of compensation was made nine days later on March 26, 1947. It is unnecessary to determine whether the board was then required to follow the legislative direction in construing section 25-a, since broader grounds exist for reversal of its determination on the merits.
In the judicial construction which had been given to section 25-a treating medical services as payment of compensation, only services related to an accidental injury or compensable illness were to be deemed within the frame of the rule. An employer who gratuitously provided general medical services could not reasonably be deemed to have kept open indefinitely his responsibility for compensation awards because at his own. expense he followed a humane and enlightened industrial policy. The judicial construction given to the statute contemplated no such premium on decency.
And an evaluation of this judicial policy suggests that in none of the adjudicated cases was it left open to doubt that the *22 furnishing of medical care was related to a compensable condition. Thus the question presented in Matter of Cook (supra) was whether the voluntary and gratuitous payment for drugs and medical services constituted payment of compensation. (See dissenting opinion, Fuld, J., p. 578.) The relationship between the condition treated and the accident was not in dispute, as the statement in the Appellate Division (270 App. Div. 869, 870) that the “ issue ” is not “ an open one ” clearly indicates.
No question of relationship between the compensable illness considered in Matter of Erb v. Sheffield Farms Co. (272 App. Div. 1082) and the medical treatment existed. In Matter of Kloberlanz v. Sheffield Farms Co. (260 App. Div. 823) it was held there was substantial evidence to support the finding that the treatment was in connection with accidental injury.
To constitute the payment of compensation there is a minimal necessity that the employer shall have some knowledge of the effect of what he is doing and an award must have basis in substantial evidence of such knowledge. There must be, as Presiding Justice Cochrane indicated in Giamelli v. Rahtz (209 App. Div. 720), a recognition of liability in the act waiving the time limitation of the statute. The court was there construing the language of section 28 as to what would be regarded as an “ advance payment of compensation ”. There must, he felt, at least be an understanding by the parties of the events in progress and his reasoning has equal application to that language, still in section 28, and to the similar language of section 25-a.
No doubt the board could have found, upon contradictory medical opinion, that the results of the injury continued through 1944, when the claim was filed; and judicial review would be limited to inquiry whether the finding was based on substantial evidence. But to say this is not also to say that the medical treatment furnished under a general policy of free medical service for all conditions to all employees was directed, and understood by the employer to be directed, toward a condition arising from an injury eight years earlier. The record is without substantial evidence, that the treatment was so understood or reasonably ought to be so understood.
Neither the myositis nor the sacroiliac strain observed and treated within the three-year period before the claim was filed and noted in the medical records has been associated with the injury by anyone. The notation on the medical record is the *23 evidence and the only evidence on the subject. Respondent Workmen’s Compensation Board makes allusions to other parts of the record to give factual support to its decision, which, when examined, afford it no support. Among them is a statement by the claimant’s personal physician of his “ impression ” from a conversation with claimant that he had been “ under treatment” by the employer “right along” and “ until recently ”.
The finding that medical services in connection with the accidental injury had been furnished within a period of three years before the filing of the claim has no substantial evidence in its support; and the additional finding of the board that medical service had been furnished in that connection after the filing of the claim is utterly without any evidence to support it. These, as well as the other necessary components of decision, must meet the general requirement of evidentiary basis applied to this kind of a case. (Cf. Matter of Casale v. Rockwood & Co., 259 App. Div. 767; Matter of Lissow v. Mabbett Motors, Inc., 279 N. Y. 585.)
The award should be reversed and the case remitted to the Workmen’s. Compensation Board to determine the liability, if any, of the Special Fund for Reopened Cases, with costs' to the appellant against Workmen’s Compensation Board.
Foster, P. J., Heeeernan, Deyo and Santry, JJ., concur.
Award reversed and the case remitted to the Workmen’s Compensation Board to determine the liability, if any, of the Special Fund for Reopened Cases, with costs to the appellant against the Workmen’s Compensation Board.